IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| SILVER STAR PROPERTIES REIT, INC., | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | |
| | * | Civil No. 23-2720-BAH |
| HARTMAN vREIT XXI, INC., et al, | | |
| | * | |
| Defendants. | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM AND ORDER**

Before the Court are Plaintiff's motion for a preliminary injunction, ECF 3, and Plaintiff's motion for a hearing on the same, ECF 28.  The Court has reviewed these motions, Defendants' opposition to each, ECFs 15 and 29, and Plaintiff's replies in support of each motion, ECFs 27 and 32.  For the reasons below, Plaintiff's motion for a preliminary injunction, ECF 3, and Plaintiff's motion for a hearing, ECF 28, are **DENIED**.

**I.     HISTORY OF THE CASE**

This case stems from a dispute between Silver Star Properties REIT, Inc. ("Plaintiff"), and Allen Hartman, Hartman vREIT XXI, Inc. (a corporation affiliated with Mr. Hartman), and Lisa Hartman (Mr. Hartman's wife) (collectively, "Defendants").  ECF 1, at 2.  Defendants each own significant numbers of shares of Plaintiff's stock, with Mr. Hartman serving as the beneficial owner of all of those shares.  *Id.*  Mr. Hartman served as the Executive Chairman of Plaintiff's Board of Directors until March 2023, when the rest of the Board of Directors removed him from that position.  *Id.* at 3.  He remains on the Board of Directors.  *Id.* at 2.

After Mr. Hartman was removed from his position as Executive Chairman, Plaintiff "adopted an incentive plan . . . [that] provides for the grant of incentives, non-qualified stock options, and Appreciation-Only Long Term Incentive Plan Performance Units (the 'Performance Units')." ECF 3, at 4.  Under this incentive plan, the Executive Committee approved a grant of more than 1,000,000 performance units to the three members of the Executive Committee (which did not include Mr. Hartman).  *Id.*  According to Plaintiff, the value of the performance units according to Generally Accepted Accounting Principles (GAAP) was approximately $928,000 in total, amounting to $309,333 per member of the Executive Committee.  *Id.*

As part of Plaintiff's required annual reports to the Securities and Exchange Commission (SEC) at the end of 2022, Plaintiff completed a valuation report with the help of a third-party consultant. ECF 1, at 5–6.  This report calculated the net asset value (NAV) per share of Plaintiff's common stock as of December 31, 2022, to be $6.25.  *Id.*  This number was included in Plaintiff's 2022 annual report.  *Id.*

Mr. Hartman and the Executive Committee of Plaintiff's Board of Directors disagree on the future of Plaintiff.  ECF 15, at 7.  While the Executive Committee wants to continue operating Plaintiff, shifting Plaintiff's focus from commercial real estate in Texas to investing in self-storage facilities across the country, Mr. Hartman believes that the company should be liquidated in order to maximize value to stockholders.  *Id.*  This difference of opinion underlies all of the actions at issue in this case.

Plaintiff is currently circulating consent solicitations to stockholders to vote on the members of Plaintiff's Board of Directors.[1]  ECF 1, at 7.  Mr. Hartman hopes that any election

---

[1] According to Defendants, electing directors through such a process is only possible because of a new bylaw that was adopted by Plaintiff's Board of Directors allowing for directors to be elected without a shareholder meeting.  ECF 15, at 7.  This bylaw was allegedly adopted just days after

will replace the current Board with a new Board more aligned with his vision for Plaintiff.  ECF

1, at 8; ECF 15, at 8–10.  On August 28, 2023, Mr. Hartman's counsel for a separate matter not

before this Court sent an email to Plaintiff's Executive Committee that stated:

> [Mr. Hartman has] hired a proxy solicitor and a law firm to oversee a proxy vote to
> contest Silver Star's current board of directors and appoint a new slate.  The new
> slate of proposed directors has been selected, and they have all agreed to run.  I
> have personally spoken with the top 10 stockholders, and they will vote for the new
> slate.  I have phone numbers for the top 100 stockholders and will start calling them
> this week.

ECF 1, at 8.

When that email was sent, Mr. Hartman had not filed a proxy statement with the SEC.[2]

ECF 3-1, at 8.  Mr. Hartman admits this email was sent but "acknowledges that in retrospect the

e-mail was a bad idea."  ECF 15, at 14.  He claims that "[v]irtually none of it is accurate" and that

it was sent only "in the context of trying to negotiate a settlement" with Plaintiff's Executive

Committee.  *Id.*  Between Plaintiff's filing of this complaint and Plaintiff's motion for a hearing

on the preliminary injunction, Mr. Hartman and his affiliates filed a proxy statement.  ECF 28, at

1.

Plaintiff alleges that Mr. Hartman has misled and deceived stockholders in his attempt to

vote out the current Board of Directors in violation of 17 C.F.R. § 240.14a-9 (Rule 14a-9).  ECF

1, at 8–11.  In the complaint, Plaintiff takes particular issue with Mr. Hartman's alleged statements

that Plaintiff's NAV per share is $10.39 as opposed to the publicly reported $6.25 value and that

the performance units received by the Executive Committee had a value of over $18,000,000, as

---

Mr. Hartman filed a lawsuit in Baltimore City Circuit Court seeking to compel Plaintiff to hold a
shareholder meeting to elect directors.  *Id.*

[2] Generally, a proxy statement must be publicly filed and provided to those who are solicited.  17
C.F.R. § 240.14a-3.  When the solicitation is done by a person who is not the issuer of the
securities, this requirement does not apply "where the total number of persons solicited is not more
than ten." 17 C.F.R. § 240.14a-2(b)(2).

opposed to Plaintiff's calculated value of approximately $928,000. *Id.* at 8–10. Plaintiff alleges that Mr. Hartman's false statements are ongoing. ECF 28-1, at 4. Mr. Hartman and his associates have issued two mass communications to shareholders since the filing of this lawsuit.

In December 2023, after the filing of the complaint and the motion for a preliminary injunction, Mr. Hartman issued a press release to stockholders regarding the election for members of the Board of Directors. ECF 27-2, at 2–6. This press release claimed, among other things, that the existing members of the Board of Directors "have granted themselves excessive incentive compensation," further claiming that Mr. Hartman and his associates "believe the Performance Units could ultimately be worth significantly more [than Plaintiff's claimed $928,000] and that the Company's SEC filings do not adequately enable stockholders to understand the potential value of the Performance Units" and that the Board of Directors "will do almost anything to remain in office." *Id.* at 3–4.

On January 9, 2024, Mr. Hartman and his assoicates posted a video on Youtube addressing stockholders and reiterating Mr. Hartman and his associates' views on the current Board of Directors. *See* ECF 32-1, at 4–6 (citing Hartman Properties, *Shareholder Address December 2023*, Youtube (Jan. 9, 2024), https://www.youtube.com/watch?v=vqXkVOkGJQM). Much of the content of the video parroted statements made in the December press release, such as claims that the current Board of Directors' strategy "is not in shareholders' best interest." *Id.* at 4. In particular, the Mr. Hartman states in the video:

> In my opinion . . . [t]he entrenched directors have awarded themselves performance shares, at [the shareholders'] expense, potentially diluting [shareholders'] investment. We are concerned that director-awarded Performance Units are worth a significant amount. Per their filing, Performance Units are convertible to Partnership Common Units, and may later be exchanged for Silver Star's Common Stock based on a 1:1 ratio. If the current Common Stock price has a value of $6.25 per share, and if the 3,159,105 Performance Units were converted to Common Stock at a 1:1 ratio, that would be $19,774,406.

*Id.* at 5.

Plaintiff also alleges that Defendants failed to file a required disclosure with the SEC in the form of a Schedule 13D filing.  ECF 1, at 3–4.  A person is required to file a Schedule 13D within ten days of becoming, "directly or indirectly[,] the beneficial owner of more than five percent" of an equity security.  17 C.F.R. § 240.13d-1.  Plaintiff alleges that, at the time of the filing of the complaint, Mr. Hartman was the beneficial owner of 7.43% of Plaintiff's stock and had not filed a Schedule 13D as required.  ECF 1, at 11.  By the time Plaintiff filed the motion for a hearing on the preliminary injunction, however, Mr. Hartman had filed a Schedule 13D.  ECF 15, at 11; ECF 28-1, at 1.

## II.    LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, at 689–90 (2008)) (citation omitted).  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  To succeed on a motion for a preliminary injunction, a movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (citing *Winter,* 555 U.S., at 20) (alteration in *Centro Tepeyac*). "To secure a preliminary injunction, a plaintiff must 'make a 'clear showing' that [it is] likely to succeed at trial, [but it] need not show a certainty of success."  *Ass'n of Am. Publishers, Inc. v. Frosh*, 586 F. Supp. 3d 379, 388 (D. Md. 2022) (quoting *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013)).

An injunction that "does little more than order the defendant to obey the law" is known as an "obey-the-law" injunction, and such injunctions are often sought in securities cases, particularly in cases brought by the SEC. *S.E.C. v. Goble*, 682 F.3d 934, 949 (11th Cir. 2012). While obey-the-law injunctions are sometimes granted, they are "disfavored," and courts across the country have expressed concern about the enforceability and propriety of such injunctions. *See City of New York v. United States Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (obey-the-law injunctions are "disfavored"); *Goble*, 682 F.3d at 949 ("We have repeatedly questioned the enforceability of obey-the-law injunctions . . ."); *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 841–42 (7th Cir. 2013) ("An injunction that does no more than order a defeated litigant to obey the law raises several concerns.").

Of particular relevance to this case is the lack of specificity that often plagues obey-the-law injunctions. *See Goble*, 682 F.3d at 950 ("[O]ne of the primary problems with obey-the-law injunctions is that they often lack the specificity required by [Federal] Rule [of Civil Procedure] 65(d)."). "An injunction 'should clearly let [the] defendant know what he is ordered to do or not to do. A court order should be phrased in terms of objective actions, not legal conclusions.'" *Id.* (quoting *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1203 (11th Cir.2001)).

While an obey-the-law injunction may be appropriate when the statute or regulation requires clearly specified conduct, these injunctions are inappropriate when the relevant law leaves ambiguous what conduct is actually prohibited. *Id.* at 951. In *Goble*, for instance, the Eleventh Circuit differentiated between the obey-the-law injunction upheld by the Supreme Court in *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191–92 (1949), which ordered the defendants to adhere to the minimum wage, record keeping, and overtime provisions of the Fair Labor Standards Act, and the obey-the-law injunction being sought by the SEC in *Goble*, which would

have enjoined the defendant from violating specific securities laws which prohibited "expansive" conduct and were subject to an "ever-changing judicial landscape" of legal interpretation.  682 F.3d at 950–51.  While the first injunction, with specific quantitative requirements from the FLSA, was permissible, the second injunction was too broad and offered the defendant little notice as to what specific conduct would violate it.  *Id.*  Thus, the clarity of the law the proposed injunction seeks to mirror is crucial in assessing the viability of an "obey-the-law" injunction.

## III.   DISCUSSION

In Plaintiff's initial complaint, it brought three counts on which it sought injunctive relief.  ECF 1, at 11–18.  Count one sought an injunction based on Mr. Hartman's alleged violation of 17 C.F.R. § 240.13d-1 in failing to file a Schedule 13D; count two sought an injunction based on Mr. Hartman's alleged violation of Rule 14a-9 in making false statements to shareholders; and count three sought an injunction based on Mr. Hartman's alleged violation of 17 C.F.R. § 240.14a-3 in failing to file a proxy statement.  *Id.*  Plaintiff initially sought a preliminary injunction on each of these counts.  *Id.*; ECF 3.  In Plaintiff's motion for a hearing on the preliminary injunction, however, Plaintiff acknowledges that the request for a preliminary injunction with respect to counts one and three has been mooted by Mr. Hartman's filing of the required proxy statement and Schedule 13D.  ECF 28-1, at 1–3.  Thus, Plaintiff now seeks only a preliminary injunction that prohibits Mr. Hartman from making false and misleading statements in violation of Rule 14a-9.  *Id.*

### A.   The requested injunction is a disfavored "obey-the-law" injunction and is too vague to give notice to Defendants of the prohibited conduct.

Plaintiff asks this Court to enjoin Defendants "from violating the federal securities laws in connection with an improper attempt to solicit proxies for election of a slate of directors to the REIT's Board of Directors."  ECF 3.  Plaintiff specifically seeks an injunction prohibiting

Defendants from making false or misleading statements in violation of Rule 14a-9.  ECF 28-1, at 1–3.

"Section 14(a) makes it unlawful to solicit a proxy in violation of applicable SEC rules and regulations.  SEC Rule 14a-9, promulgated pursuant to Section 14(a), prohibits the solicitation of proxies through a proxy statement that contains false or misleading material facts or omits any material fact that leaves a proxy statement false or misleading." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 318 (4th Cir. 2019) (citing 15 U.S.C. § 78n(a)).  A material fact is one that a reasonable investor would likely consider important.  *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  Both the materiality of a statement and whether or not the statement is misleading must be assessed from the "perspective of a reasonable investor." *Paradise Wire*, 918 F.3d, at 318 (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186–87 (2015)).  Here, Defendants do not dispute the materiality of Mr. Hartman's statements; as such, this analysis turns on whether or not the statements were misleading.  *See* ECF 15, at 15–18 (making no argument that the statements were not material).

"The Supreme Court has held that Section 14(a) of the Act and Rule 14a–9[3] apply to statements of opinion with respect to material facts.  Liability may arise under Section 14(a) for

---

[3] The relevant portion of the regulation reads:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a-9(a).

false statements of reasons, opinion, and belief that are knowingly made." *Hayes v. Crown Cent. Petroleum Corp.*, 78 F. App'x 857, 864 (4th Cir. 2003) (citing *Virginia Bankshares v. Sandberg,* 501 U.S. 1083, 1087–92 (1991)). Still, the Supreme Court has made clear that it "has not determined whether it is necessary to demonstrate scienter to satisfy the 'knowing' element of a Section 14(a) claim." *Virginia Bankshares*, 501 U.S. at 1091 n.5. The Fourth Circuit has also "expressly declined to determine the state of mind of a defendant required to establish § 14(a) liability. Some courts have concluded that negligence is enough to support liability under Section 14, while others have required something more, at least for certain categories of defendants." *Karp v. First Connecticut Bancorp, Inc.*, 535 F. Supp. 3d 458, 468–69 (D. Md. 2021), *aff'd*, 69 F.4th 223 (4th Cir. 2023) (citations omitted).

The regulation at issue here, Rule 14a-9, is in many ways analogous to the regulation underlying the proposed injunction in *Goble* and lacks the specificity and clearly defined guidance present in the statute underlying the injunction in *McComb*. As in *Goble*, the regulation here covers an "expansive" range of conduct, prohibiting any statement which could be misleading in the context in which it was made. *Goble*, 682 F.3d at 951; 17 C.F.R. § 240.14a-9(a). This pertains not only to statements of fact, but also to false statements of opinion pertaining to material facts, complicating the analysis of exactly which statements are prohibited. *Hayes*, 78 F. App'x at 864. Furthermore, the question of scienter remains unsettled, subjecting enforcement of the statute to "an ever-changing judicial landscape," as was the case in *Goble*. *Virginia Bankshares*, 501 U.S. at 1091 n.5; *Goble*, 682 F.3d at 951. Unlike the statute in *McComb*, there are no quantitative standards against which to measure Defendants' conduct. *Compare McComb*, 336 U.S. at 194 (explaining that statute underlying injunction provided formula by which defendants were to calculate employees' pay), *with* 17 C.F.R. § 240.14a-9(a) (broadly prohibiting false or misleading

statements in proxy solicitations).  Accordingly, the injunction as requested by Plaintiff will not be issued.

> **B.  No hearing is necessary at this time.**

Because the Court is able to fully consider the motion for a preliminary injunction on the parties' filings and declines to issue an injunction, no hearing on the motion is necessary.  *See, e.g.*, *Rullan v. Goden*, Civ. No. CCB-17-3741, 2023 WL 3093406, at *1–3 (D. Md. Apr. 26, 2023), *reconsideration denied*, 2023 WL 5674156 (D. Md. July 27, 2023) (denying motion for preliminary injunction without a hearing).  "'[Federal] Rule [of Civil Procedure] 65 does not require an evidentiary hearing[,]' so long as 'the party opposing the preliminary injunction [has] a fair opportunity to oppose the application and to prepare for such opposition.'"  *NAACP v. City of Myrtle Beach*, 383 F. Supp. 3d 603, 609 (D.S.C. 2019) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1311 (11th Cir. 1998)).  Here, Plaintiff and Defendants have fully briefed the motion for a preliminary injunction and continued to address issues relevant to the issuance of the preliminary injunction in their filings on the motion for a hearing.  *See* ECFs 28, 29, 32.  As such, the Court now denies the motion for a preliminary injunction "only after consideration of all facts and arguments deemed important by the parties."  *NAACP*, 383 F. Supp. at 610 (quoting *Drywall Tapers & Pointers of Greater NYC, Local 1974 v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada*, 537 F.2d 669, 674 (2d Cir. 1976)).

> **C.  A more narrow injunction may be appropriate pending the resolution of the parties' January 26 hearing in the Baltimore City Circuit Court.**

Though the Court declines to issue the broad "obey-the-law" injunction requested by Plaintiff, a more narrow injunction in response to some of the statements in Defendants' January 9, 2024, video may be appropriate.  The Court takes judicial notice of the parties' hearing set before the Baltimore City Circuit Court for January 26, 2024.  *See* Results for Case Number

24C23003722, Maryland Judiciary Case Search, https://casesearch.courts.state.md.us/casesearch/ (last visited Jan. 25, 2024).  A motion for reconsideration of Plaintiff's motion for a preliminary injunction may be appropriate depending on the outcome of the January 26, 2024, circuit court hearing.

## IV.    CONCLUSION

Make no mistake, neither party should view the Court's decision on this preliminary matter as somehow greenlighting the violation of federal securities law.   To the contrary, the parties are now unquestionably aware of the "rules of the road" governing shareholder communications and are reminded to strictly adhere to them as their disputes move forward.

For the reasons above, Plaintiff's motion for a preliminary injunction, ECF 3, is **DENIED**, and Plaintiff's motion for a hearing on the preliminary injunction, ECF 28, is **DENIED**.

Dated: <u>January 26, 2024</u>                                  <u>                    /s/                    </u>

                                                                         Brendan A. Hurson
                                                                         United States District Judge